IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| TRACY WATTS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-824 |
| | ) | Judge Arthur J. Schwab/ |
| ROBERT TRETINIK, Health Care | ) | Magistrate Judge Amy Reynolds Hay |
| Administrator; DR. MICHAEL HERBICK, | ) | |
| Doctor; CHRIS MEYERS, (P.A.), | ) | |
| | ) | |
| Defendants | ) | Re: Dkt. Nos. [35] & [45] |


REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that Defendant Tretinik's motion to dismiss filed by Defendant Robert

Tretinik ("Tretinik"), Dkt. [35], be granted and that the complaint be dismissed against him for

failure to state a claim upon which relief can be granted.   It is further recommended that the

motion to dismiss filed by Defendants Dr. Michael Herbick and Physician Assistant Chris

Meyers (collectively "the Medical Defendants"), Dkt. [45], be granted in part and denied in part;

it should be granted as to all claims except it should be denied as to Plaintiff's Eighth

Amendment claims.

REPORT

Tracy Watts ("Plaintiff"), serving a sentence of life for first degree murder, has filed a

civil rights complaint pursuant to 42 U.S.C. § 1983.  He complains that while he was a prisoner

at SCI-Fayette, he was denied adequate medical care for the treatment of what appears to have been a hydrocele.[1]  See Dkt. [35-2] at 13, ¶ 1.

Because Plaintiff procedurally defaulted all of his claims against Defendant Tretinik by failing to name him in the relevant grievance, the complaint should be dismissed as against him.

However, because Plaintiff adequately alleges that the Medical Defendants permitted him to unnecessarily suffer pain that they could easily have alleviated, the complaint is sufficient to state an Eighth Amendment claim of deliberate indifference and therefore, the Medical Defendants' motion to dismiss should be denied in part, insofar as it sought dismissal of the Eighth Amendment claims.  Otherwise, the Medical Defendants' motion to dismiss should be granted as to all of Plaintiff's remaining claims, and those remaining claims, i.e.,  Fourteenth Amendment substantive due process, Equal Protection, Fifth Amendment and injunctive relief claims, should be dismissed for failure to state a claim upon which relief can be granted.

### *Relevant Procedural and Factual History*

Plaintiff, proceeding pro se and in forma pauperis, Dkt. [3],  executed a civil rights form complaint alleging violations of his federal Constitutional rights.  Dkt. [4].   In that complaint, he recounted a course of treatment for his hydrocele, alleging that from December 4, 2006 until January 15, 2007 he was not properly treated for his hydrocele nor was he given appropriate follow up care.  That complaint named the following defendants: Robert Tretinik, the Health Care Administrator at SCI-Fayette, Dr. Michael Herbik and Physician Assistant Chris Meyers.

---

1.  "A hydrocele is a fluid-filled sac surrounding a testicle that results in swelling of the scrotum . . . .")

http://www.mayoclinic.com/health/hydrocele/DS00617

(Site last visited on 7/16/2008).

"The Medical Defendants" filed a motion to dismiss, Dkt. [20], and a brief in support, Dkt. [21].

Defendant Tretinik filed a motion to dismiss, Dkt. [22], and a brief in support, Dkt. [23].

Attached to the motion to dismiss were copies of Plaintiff's grievances and responses,

concerning the course of treatment he received. Dkt. [22-2] at 5 to 15. In that motion, Defendant

Tretinik argued that because Plaintiff failed to name him in any grievance, Plaintiff had

procedurally defaulted any potential claims against him.

In response, Plaintiff filed a brief in opposition to Defendant Tretinik's motion, and

argued therein that the Supreme Court's case of Jones v. Bock, 127 S.Ct. 910 (2007), excused

any requirement to name Tretinik in a grievance. In addition, Plaintiff filed a motion, Dkt. [32],

for leave to file an amended complaint in an attempt to remedy some of the deficiencies pointed

out by the motions to dismiss. Attached to that motion was a proposed amended complaint.

Because no responsive pleading had yet been filed, Plaintiff had an absolute right to file an

amended complaint. Noting this, Defendant Tretinik filed a motion to dismiss the amended

complaint, Dkt. [35], and a brief in support, Dkt. [36], even before the amended complaint had

been formally docketed. Defendant Tretinik again attached the relevant grievances and responses

to his Motion to Dismiss the Amended complaint. Dkt. [35-2] at 5 to 15. The court ordered that

the proposed amended complaint be filed, Dkt. [38], and it was filed, Dkt. [41]. Plaintiff filed a

response, Dkt. [48], to Defendant Tretinik's motion to dismiss the amended complaint.

The Medical Defendants filed a motion to dismiss the amended complaint, Dkt. [45], and

a brief in support, Dkt. [46]. They also filed a supplemental brief in support of their motion to

dismiss the amended complaint. Dkt. [52]. Plaintiff filed his brief in opposition, Dkt. [54], to

the Medical Defendants' Motion to Dismiss the Amended complaint, as well as a brief in opposition, Dkt. [55], to their supplemental brief.

### *Applicable Legal Principles*

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under this standard, the court must, as a general rule, accept as true all factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). Nevertheless, under the 12(b)(6) standard, a "court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001). Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). In addition, the Court of

Appeals in <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 (3d Cir. 2004), held that " defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" <u>Bell Atlantic Corp.</u>, 127 S.Ct. at 1964-1965. Or, put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974.

In addition, because Plaintiff is a prisoner proceeding in forma pauperis, the screening provisions of the Prison Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915(e)[2] apply. Furthermore, because Plaintiff is a prisoner who has brought an action seeking redress from a governmental entity or employees of a governmental entity, the PLRA screening provisions of 28

---

2. 28 U.S.C. §1915(e)(2) provides in relevant part that

   (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case **at any time** if the court determines that--
        (A) the allegation of poverty is untrue; or
        (B) the action or appeal--
                (i) is frivolous or malicious;
                (ii) fails to state a claim on which relief may be granted;
        or
                (iii) seeks monetary relief against a defendant who is immune from such relief.

(emphasis added).

U.S.C. § 1915A apply.[3]  Lastly, because Plaintiff has filed a suit concerning prison conditions,

the screening provisions of 42 U.S.C. § 1997e apply.[4]  Pursuant to these screening provisions, a

court is obliged to sua sponte dismiss complaints that are frivolous, malicious or that fail to state

a claim upon which relief can be granted at any point in the litigation process.  The court's

obligation to dismiss a complaint under the PLRA screening provisions is not excused even after

defendants have filed a motion to dismiss.  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6

(9th Cir. 2000).  Hence, if there is a ground for dismissal which was not relied upon by a

defendant in a motion to dismiss, or, if a defendant did not even file such a motion to dismiss, the

court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening

provisions of the PLRA.  See Lopez.

_____

3.   28 U.S.C. § 1915A provides in relevant part that

> (a) Screening.--The court shall review, before docketing, if feasible or, in any event, **as soon as practicable** after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

(emphasis added).   To the extent that the report relies on any grounds not raised by the motions to dismiss, this was as soon as practicable for the court to perform its screening function under Section 1915A.

4.   42 U.S.C. § 1997e(c)(1) provides in relevant part that

> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

*Discussion*

## 1. Defendant Tretinik's Motion to Dismiss

Defendant Tretinik attached to his motion to dismiss the amended complaint and the indisputably authentic copies of Plaintiff's grievances and responses. Hence, those grievance documents can be properly considered on this motion to dismiss. Plaintiff concedes that the only relevant grievance to his present suit is Grievance No. 175508. Dkt. [55] at 1.

A review of the Grievance No. 175508 demonstrates that Plaintiff failed to name Defendant Tretinik in the grievance or in the grievance appeal. This results in Plaintiff procedurally defaulting any claims against Defendant Tretinik.

Pursuant to 42 U.S.C. § 1997(e)(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Court takes judicial notice of the fact that the pertinent Pennsylvania Department of Corrections ("DOC") policy establishing what administrative remedies are available to prisoners in DOC institutions was promulgated in DC-ADM 804.[5]

The Court of Appeals has declared that DC-ADM 804 requires that the prisoner name individuals in the grievance whom he eventually sues in court in order to exhaust under the

_____

5. DC-ADM 804 is available at

http://www.cor.state.pa.us/standards/lib/standards/DC-ADM_804_Inmate_Grievances.pdf

(site last visited on 7/16/08).
This version of DC-ADM 804 was effective January 3, 2005, and, as such, governed Plaintiff's complaints, occurring in December 2006 to January 2007.

PLRA. In Spruill, the Court of Appeals was confronted with a situation where, although the

Pennsylvania prisoner had filed a grievance, the grievance failed to mention one of the people

whom the prisoner subsequently named as a defendant in a civil rights action based on the same

events as the grievance. The Court held that because the grievance did not mention the

particular individual by the name of Brown, the prisoner-plaintiff had procedurally defaulted his

claims against Brown. The holding of Spruill in this respect is directly on point:

> [t]he passage quoted above regarding the contents of the grievance is also the only
> section of the Grievance System Policy requiring that the grievance identify
> specific persons. On this matter, the text is mandatory, or nearly so: "The inmate
> shall include a statement of the facts relevant to the claim.... The inmate should
> identify any persons who may have information that could be helpful in resolving
> the grievance. The inmate should also include information on attempts to resolve
> the matter informally." DC-ADM 804, Part VI.A.1.d. To the extent that Brown's
> identity is a "fact[ ] relevant to the claim"-and it is-it was mandatory for Spruill to
> include it. To the extent that Brown was a "person[ ] who may have information"
> or someone with whom Spruill made "attempts to resolve the matter
> informally"-and he was-Spruill was required to identify Brown if practicable.
> Spruill did not, and has offered no explanation for his failure to do so. Any
> grievance against Brown would now be time-barred. See DC-ADM 804, Part
> VI.A.1.e ("Grievances must be submitted by the inmate ... within fifteen (15)
> working days after the events on which the claims are based."). Thus Spruill has
> procedurally defaulted a claim against Brown by failing to identify him.

Spruill, 372 F.3d at 234.

In response to Defendant Tretinik's motion, Plaintiff does not attempt to challenge the

fact that he failed to name Tretinik in the grievance process. Rather, he argues the legal

significance of not doing so.

Plaintiff argues that under Jones v. Bock, Plaintiff was not required to name Tretinik.

Plaintiff is mistaken. First, as noted by Spruill, the standard by which to measure whether a

prisoner has exhausted his administrative remedies is whether he complied with the procedures

set forth in the prison's rules for grievances or administrative remedies.  See, e.g., Spruill.[6]

Looking to that yardstick, it is clear what the grievance policy required of Plaintiff, namely, that

"[t]he inmate will identify any person(s) who may have information that could be helpful in

resolving the grievance."  DC-ADM 804VI.A. 7.  Here, it is undisputed that Plaintiff did not

identify Tretinik in Grievance No. 175508, which, as Plaintiff concedes, is the only relevant

grievance.  As explained by Spruill: "[t]he purpose of the regulation here is to put the prison

officials on notice of the persons claimed to be guilty of wrongdoing.  As such, the prison can

excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging

that they were fairly within the compass of the prisoner's grievance."  Spruill, 372 F.3d at 234.

It is in this aspect that the DOC regulations at DC-ADM 804, governing the exhaustion

requirement in Pennsylvania state prisons, and which provides the yardstick by which we are

required to measure exhaustion, Spruill, 372 F.3d at 231, distinguish this case from the Supreme

Court case in Jones v. Bock, wherein the court there held that failing to name the defendants in

---

6.
   The Spruill Court held that

> there simply is no express federal law describing the procedural requirements with which
> prisoners must comply in satisfying § 1997e(a)'s exhaustion requirement.  As between
> crafting judge-made law on this subject and looking to state prison grievance procedures,
> the latter will far better serve the policy interests of the PLRA. We have repeatedly noted
> above that the legislative history is clear that the PLRA was intended to return control of
> prisons to wardens;  one aspect of this was a comprehensive program of returning control
> of the grievance process. Mandatory exhaustion (with a procedural default component)
> ensures that inmate grievances will be addressed first within the prison's own system-in
> this respect, the PLRA is thus appropriately defederalizing.  Moreover, Congress
> repealed the portions of CRIPA that established federal standards-setting and
> certification for prison grievance systems.  It would be anomalous, to say the least, to
> refuse to give effect to the very rules that the PLRA encourages state prison authorities
> to enact.

Spruill, 372 F.3d at 231 (citation omitted).

the Michigan State grievance procedure did not constitute a failure to exhaust, because there was

such requirement to do so contained in the Michigan state grievance policy nor was there any in

the PLRA itself.  In contrast to Pennsylvania's regulations, the State of Michigan's grievance

procedure at issue in Jones v. Brock, contained no requirement to name individuals.  As the Bock

court noted:

> At the time each of the grievances at issue here was filed . . . , the MDOC policy
> did not contain any provision specifying who must be named in a grievance.
> MDOC's policy required only that prisoners "be as specific as possible" in their
> grievances, 1 App. 148, while at the same time the required forms advised them to
> "[b]e brief and concise." 2 id., at 1. The MDOC grievance form does not require a
> prisoner to identify a particular responsible party, and the respondent is not
> necessarily the allegedly culpable prison official, but rather an administrative
> official designated in the policy to respond to particular types of grievances at
> different levels. Supra, at 6. The grievance policy specifically provides that the
> grievant at Step I "shall have the opportunity to explain the grievance more
> completely at [an] interview, enabling the Step I respondent to gather any
> additional information needed to respond to the grievance." 1 App. 151. Nothing
> in the MDOC policy itself supports the conclusion that the grievance process was
> improperly invoked simply because an individual later named as a defendant was
> not named at the first step of the grievance process.

Bock, 127 S.Ct. at 922 .  In contrast, the Court in Spruill has already held that the Pennsylvania

DOC's grievance policy does contain such a requirement to name responsible individuals and

that "[t]he purpose of the regulation here is to put the prison officials on notice of the persons

claimed to be guilty of wrongdoing."  Spruill, 372 F.3d at 234.  Hence, this case is

distinguishable from Bock.  But cf. Williams v. Beard, 482 F.3d 637, 640 n.4 (3d Cir. 2007):

> To the extent that Hollibaugh suggests that because Williams was to implicate
> him he was entitled to notice sooner rather than later, the Supreme Court recently
> noted that "early notice to those who might later be sued ... has not been thought
> to be one of the leading purposes of the exhaustion requirement." Jones v. Bock,
> --- U.S. ----, ----, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007).

This court understands <u>Bock</u> to state that whereas Congress' intent in the PLRA's statutory

exhaustion requirement was not thought to have as one of its **leading** purposes early notice, such

a purpose may have been a subordinate purpose. Even if not a subordinate purpose of the

Congress, early notice can be a purpose of the state policy (which provides the yardstick by

which to measure exhaustion) and as <u>Spruill</u> seemed to at least imply, was such a purpose of the

DOC policy. Even if not a purpose of the DOC policy, it is clear, regardless of the purpose of the

requirement, that <u>Spruill</u> requires the prisoner-grievant-plaintiff to name in the grievance those he

eventually sues, upon pain of procedural default. <u>See</u>, <u>e.g.</u>, <u>Williams v. Pennsylvania, Dep't of</u>

<u>Corrections</u>, 146 Fed.Appx. 554, 557 (3d Cir. 2005)("his failure to identify defendants Herbert,

Street, or Smith in either of his two grievances, means that he failed to exhaust his administrative

remedies in accordance with Pennsylvania's grievance process and the PLRA.").

Here, the Plaintiff concededly did not identify Defendant Tretinik, by name or otherwise,

in his grievance or appeals therefrom and so he did not "put them on notice of the persons

claimed to be guilty of wrongdoing" within the contemplation of <u>Spruill</u>.

Because the time for filing any grievances against the Defendant Tretinik has long

passed,[7] the failure to exhaust his administrative remedies must be treated as a procedural

default. <u>See</u>, <u>e.g.</u>, <u>Spruill v. Gillis</u>, 372 F.3d at 230 (declaring that failure to abide by DOC's

---

7. The DOC policy in effect at the time Plaintiff was required to exhaust establishes that an "inmate must submit a grievance for initial review to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based." DC-ADM 804 § VI.A.8. It appears that this has been the policy since at least 1994 up to and including the present. <u>See</u> <u>Davis v. Warman</u>, 49 Fed.Appx. 365 (3d Cir. 2002)("*See* Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI.B.2. (Oct. 20, 1994) ('Grievances must be submitted for initial review ... within fifteen (15) days after the events upon which the claims are based.')").

internal grievance procedures may result in procedurally defaulting a civil rights claim in federal court, reasoning that "[w]e believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. . . . Congress wanted to erect any barrier it could to suits by prisoners in federal court, and a procedural default rule surely reduces caseloads (even though it may be a blunt instrument for doing so)"); Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)("[t]o exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim .... these include time limits."); Berry v. Kerik, 366 F.3d 85, 86 (2d Cir. 2004)(holding that "in the absence of any justification for not pursuing available remedies, his [i.e., the prisoner's] failure to pursue administrative remedies while they were available precluded his federal lawsuits, and they were properly dismissed with prejudice.") (footnote omitted).

Accordingly, Plaintiff has procedurally defaulted his claims against Defendant Tretinik and he must be dismissed as a party defendant.

The Medical Defendants also attempt to bring themselves within this rule. However, Plaintiff clearly named Defendant Meyers in Grievance No. 175508. Dkt. [35-2] at 14 to 15. While Plaintiff did not name Dr. Herbik in the initial grievance, the Initial Review Response ("IRR") several times mentions "the medical director." For example, the IRR states that, " [o]n December 5, 12005, he [i.e., Plaintiff] was seen by the medical director and the inmate stated 'the pain is better and the swelling is down.' On December 11, 2006, he was seen by the medical director and stated he has pain." Dkt. [35-2] at 13, ¶¶ 5 to 6. From the complaint, it is clear that Plaintiff was seen by Dr. Herbik on the day after surgery, i.e., on December 4, 2006. Dkt. [4] at 2, ¶ IV.C. At this stage of the proceedings, the fact that the medical director was named in the

IRR and that it is very likely that Dr. Herbik is the medical director who saw Plaintiff on

December 5, 2006, this is sufficient under Spruill to excuse Plaintiff's failure to mention Dr.

Herbik in the initial grievance. In Spruill, although the Court held that the prisoner plaintiff

therein procedurally defaulted his claim by not naming in the grievance one of the defendants

named in the suit, the Court went onto hold that the prison system waived the default because in

the initial grievance response, the responding official identified the individual whom the prisoner

failed to name in the grievance but eventually named in the lawsuit. Spruill, 372 F.3d at 234.

Likewise here, the naming of the Medical Director in the IRR, which may be Dr. Herbik,

prevents the court from dismissing the complaint on this basis against Dr. Herbik.

### 2. Medical Defendants' Motion to Dismiss

The first argument Medical Defendants make in their motion to dismiss the amended

complaint is that Plaintiff has failed to state an Eighth Amendment claim against them.

Plaintiff's allegations included the complaint that, after he underwent surgery, he had extreme

pain and walking without the assistance of crutches or a wheel chair increased the pain and that

he made the defendants aware of this and yet they did nothing to alleviate the pain or what they

did do, i.e., prescribing ineffective pain medication that they knew to be ineffective, lead to

Plaintiff's unnecessary suffering and the defendants were fully aware of this. We find these

allegations sufficient to state a claim for relief under the Eighth Amendment at this stage in the

litigation. The infliction of unnecessary pain, which could have easily been alleviated by the

provision of crutches or a wheel chair could support a finding of deliberate indifference.

Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976) (holding that "a prisoner who is needlessly

allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering").

Accordingly, to the extent that the Medical Defendants seek to have Plaintiff's Eighth Amendment claims dismissed, their motion should be denied.

However, their motion should be granted as to Plaintiff's Fourteenth Amendment substantive due process claims. Plaintiff mentioned the Fourteenth Amendment in his amended complaint. Dkt. [41] at 4, ¶ 34. However, as the Medical Defendants point out, Plaintiff does not have a substantive due process claim in addition to the Eighth Amendment claim. Any such Fourteenth Amendment substantive due process claims are barred by the doctrine of <u>Albright v. Oliver</u>, 510 U.S. 266 (1994)(plurality); <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) and <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998). Hence, the Fourteenth Amendment substantive due process claim should be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff also mentions the Fifth Amendment. The Fifth Amendment provides in full that

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

None of the provisions of the Fifth Amendment appears to be implicated by Plaintiff's complaint, except for the due process provision. However, the Fifth Amendment's due process clause only protects against federal governmental action. See <u>Riley v. Camp</u>, 130 F.3d 958, 972

14

n.19 (11ᵗʰ Cir. 1997)("The Fifth Amendment obviously does not apply here--the acts complained of were committed by state rather than federal officials."); <u>Wrinkles v. Davis</u>, 311 F.Supp.2d 735, 738 (N.D.Ind. 2004) ("The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials.").  All the Defendants named herein are state not federal actors and, hence, the Fifth Amendment is inapplicable.  Accordingly, Plaintiff's Fifth Amendment claims should be dismissed for failure to state a claim.

We turn next to Plaintiff's Equal Protection claim.  The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.   In order to state an equal protection claim, Plaintiff must show that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations.  See <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 683 (2d Cir. 1995).  Instantly, Plaintiff has made no allegations that any difference in his treatment was motivated by impermissible considerations.  See  <u>Fease v. Town of Shrewsbury</u> 188 F.Supp.2d 16, 17-18 (D. Mass. 2002)(in dismissing an equal protection claim for failure to state a claim the court declared that "[i]n order to state a claim for violation of equal protection, the plaintiffs must allege that they were selectively treated compared to others similarly situated and that such selective treatment was based on impermissible considerations such as race or gender. Although, the plaintiffs state that Plaintiff Andrea Fease is a person of Japanese descent, they fail to allege that she was discriminated against based upon her race.")  Because Plaintiff has failed to allege disparate treatment against him in comparison with those similarly situated based upon impermissible considerations, any equal protection claim must be dismissed.

In his complaint, Plaintiff sought injunctive relief as well from the Defendants. However, during the pendency of this suit, Plaintiff was transferred out of SCI-Fayette into SCI-Coal Township. Dkt. [56] (notice of change of address). Accordingly, this renders moot his claims for injunctive relief. The "rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). Where a plaintiff seeks injunctive relief for prison conditions that he can no longer be subject to, there is no longer a live controversy and a court cannot grant that injunctive relief. See Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993); Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa. 1998); Marrie v. Nickels, 70 F.Supp.2d 1252, 1259 (D.Kan. 1999) ("Generally, an inmate's transfer to another prison or release moots his request for declaratory or injunctive relief.") (collecting cases). Hence, all of Plaintiff's claims for injunctive relief must be dismissed as moot.

To summarize, Defendant Tretinik's motion to dismiss should be granted and the complaint should be dismissed as against him. The Medical Defendants' motion to dismiss should be granted in part and denied in part. The motion should be denied as to Plaintiff's Eighth Amendment claims of deliberate indifference but should be granted in all other respects. If the District Court adopts this Report, the sole remaining claims are Eighth Amendment claims for deliberate indifference against the Medical Defendants.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections by August 4, 2008 and responses are due seven (7) days thereafter in accordance with the schedule established in the docket entry

reflecting the filing of this Report and Recommendation. Failure to timely file objections may

constitute waiver of any appellate rights.

Respectfully submitted,

*/s/ Amy Reynolds Hay*

United States Magistrate Judge

Dated: 17 July, 2008

cc:     The Honorable Arthur J. Schwab
        U.S. District Court Judge

cc:     Tracy Watts
        AS-2157
        S.C.I. Coal Township
        1 Kelley Drive
        Coal Township, PA 17866-1021

        All counsel of Record via CM-ECF